### HAYWARD *v.* BATH.

Charges of partiality, corruption, and improper conduct on the part of county commissioners in laying out a highway, unsustained by proof, furnish no cause for setting aside their report.

A contract binding a railroad corporation, having a railroad in operation, to construct a side track at a point on their railroad near the terminus of a proposed highway, within a reasonable time after it shall be con-

Hayward *v.* Bath.

structed, is competent to be received and considered by the commissioners, in a hearing upon the laying out of the proposed highway, as evidence tending to show the probability that, if the proposed road be laid and built, persons drawing lumber over it will be furnished with railroad facilities at that point.

PETITION for a new highway in the towns of Bath and Landaff, which, having been previously referred to the county commissioners, they, at the October term, 1859, presented a report, laying out the highway prayed for, agreeably to the prayer of the petitioners. Thereupon the town of Bath filed six exceptions to the acceptance of the report, the questions arising upon which were ordered by the presiding justice to be transferred to this court, as follows:

1. By reason of the exceptions taken by the defendants at the hearing before the commissioners, and appearing upon the extract from the report hereto appended:

2. Because the commissioners, or one of them, during the view and the hearing, did themselves introduce and encourage conversations and discussions relative to the laying out of the proposed new highway, with one party, in the absence of the other party, and when such other party had no notice to be present:

3. Because divers of the petitioners for the proposed new highway, before and during the view and the hearing, made representations in relation thereto, to one or more of the commissioners; and engaged in conversations or discussions respecting the same with one or more of the commissioners, which representations, conversations and discussions were calculated and intended to influence the judgment of said commissioner or commissioners against the cause of the defendants, and in favor of the laying out of the proposed new road:

4. Because, before the view and the hearing, and during the same, before the conclusion thereof, and before the

evidence was all laid before the commissioners, one or more of the commissioners expressed opinions in favor of the laying out of the proposed new road :

5. Because, before and during the view and the hearing, one or more of the commissioners listened to representations from, and introduced and encouraged conversations and discussions with persons not parties, which were calculated and designed to influence their judgment against the cause of the defendants, and in favor of the laying out of the proposed new highway :

6. Because the report does not state, as the ground for the laying out of the new highway, that there is occasion for it for the accommodation of the public.

---

" As evidence to show the probability that in case the road prayed for should be laid and built, persons drawing lumber over it would have railroad facilities at a place called Deming's Landing, on the White Mountains Railroad, the petitioners were permitted to introduce a written contract between Daniel Whitcher, one of the petitioners, and an owner of mills and timber on the line of the proposed road, and the White Mountains N. H. Railroad, of which the following is a true copy :

' It is agreed between the White Mountains N. H. Railroad and Daniel Whitcher as follows : The said White Mountains N. H. Railroad agree that they will incur the expense of putting in a side track at a spot on said White Mountains N. H. Railroad, called Deming's Landing, and that said side track shall be put in, provided the said Whitcher will furnish the land and sleepers, and do the grading for said side track, and provided the road, called the Bungay road, is built ; and said Whitcher agrees, in consideration aforesaid, that he will furnish the land and

Hayward *v.* Bath.

sleepers and do the grading for said side track in a reasonable time after said Bungay road is built.

> E. J. M. HALE,  
> F. J. EASTMAN,  } *Directors of White Mountains*  
> CEPHAS BRACKETT,  } *N. H. Railroad.*
>
> DANIEL WHITCHER.

August 24, 1859.'

"The town of Bath made the following objection to the above evidence :

'The towns object to the agreement purporting to be signed by three of the directors of the White Mountains Railroad and Daniel Whitcher, as being incompetent and improper to be received, acted upon, or in any way considered by the commissioners in the determination of this case,' which objection was overruled, and the evidence received.

> JOSEPH PARKER,  
> DAVID CULVER,  } *County Commissioners for the*  
> A. M. HOLDEN,  } *County of Grafton.*"

*Woods & Binghams, H. Hibbard*, and *Lang*, for Bath.

*Felton, C. R. Morrison, C. W. & E. D. Rand*, and *Quincy*, for the petitioners.

FOWLER, J.*  This case comes before us at the present time upon exceptions taken by the town of Bath to a report of the commissioners for Grafton county, laying out a new highway in accordance with the prayer of the petition ; those exceptions resting entirely upon the alleged errors and misconduct of the commissioners in their proceedings. The grave character and serious importance of the charges preferred against a tribunal established by law, and selected by the people to adjudicate in the first instance upon the necessity of the contemplated

SARGENT, J., having been of counsel, did not sit.

highway; the protracted nature of the litigation between the parties, not less than the great zeal and rare ability displayed by the learned and distinguished counsel upon both sides, in accumulating, arranging and analyzing the testimony, and in elucidating and discussing the legal questions raised, have demanded and secured a diligent examination of the evidence, and the most careful consideration of the arguments laid before us. We shall, therefore, proceed to state briefly the conclusions at which we have, without difficulty or hesitation, arrived in the premises.

The sixth exception rests on an alleged error of the commissioners, assumed to be apparent on the face of their report; to wit, that it " does not state, as the ground for the laying out of the new highway, that there is occasion for it for the accommodation of the public."

How entirely this exception is without even the shadow of a foundation, cannot be more clearly shown than by quoting the language of the report. After stating various preliminary proceedings, notice to land-owners, &c., the commissioners say in their report, that " after a full examination, we are of the opinion, and think it expedient and necessary, *for the due accommodation of the public*, that the burden of making and maintaining a highway on the proposed route, and paying the land damages to the owners of land, should be imposed upon said towns of Bath and Landaff, and that the lands of individuals should be taken for that purpose ; we have, *therefore*, laid out a highway on the proposed route," &c.

It is difficult to conceive in what terms the commissioners could more clearly and distinctly have stated that the sole ground, in their judgment, for laying out the new highway, was the due accommodation of the public.

The second, third, fourth and fifth exceptions impute improper conduct, corruption or partiality, to the commissioners, or some of them, in various ways, whereby it

Hayward *v.* Bath.

is contended that their action was so influenced and taint-
ed, that the report should be set aside as invalid.

[After referring to and copying the opinion of the
court, in *Peavey* v. *Wolfborough*, 37 N. H. 286, which had
been cited by the counsel for Bath, as going fully to sus-
tain the positions taken in the present case, the court pro-
ceeded to analyze and comment upon the evidence con-
tained in eighteen depositions, taken for the town, and
eight taken for the petitioners, and to show that, taking
the decision in *Peavey* v. *Wolfborough* to be sound law,
exactly and literally as it is printed, the evidence fell en-
tirely short of bringing the ʻcommissioners for Grafton
county, or either of them, within its condemnation, and
utterly failed to prove the petitioners guilty of the impro-
prieties charged against them.   As this discussion and
analysis of the evidence could not be of general interest,
they are omitted.   The opinion concluded as follows :]

We have thus adverted to all the exceptions charging the
commissioners with corruption, partiality and improper
conduct, and to all the substantial portions of the evi-
dence by which those charges are attempted to be sus-
tained, and the result, at which we have most unhesita-
tingly arrived, is, that the charges are entirely unsustained.
So far as we can discover, the evidence discloses nothing to
prove that either of the commissioners acted corruptly,
under any improper bias or prejudice, or was in any way
guilty of conduct unbecoming his official position.   On .
the contrary, the very full and satisfactory statement of
Mr. Parker, the chairman of the board, in his deposition,
of the way and manner in which the whole case was con-
sidered by them after the close of the hearing, and of the
very deliberate and careful examination they gave to it
for nearly twenty-four hours, almost demonstrates that
there never could have been the slighest foundation in
truth for the numerous charges and assumptions involved
in the various exceptions taken to the conduct and motives

of the commissioners. Indeed, the testimony offered by the town shows most clearly the honesty and purity of purpose of Mr. Culver, whose conduct is most strongly assailed, and that he could have been actuated only by his conviction of what the public accommodation demanded ; for it proves that, when the town proposed to him to change the route so as to lay out the new road to the foot of Bradley hill, instead of laying it in the place where it was ultimately laid, he utterly refused to do so, even if the petitioners, as well as the town, would agree to it, because he said he believed the other to be the right place for it, and no consideration* could induce him, as a commissioner, to consent to lay the road where he thought it ought not to be laid. On the whole, therefore, the entire mass of evidence on both sides, taken together, only goes to establish and confirm what the court, in *Peavey* v. *Wolfborough*, say is the ordinary legal presumption in such cases, "that the people had elected commissioners in whom they could confide, as men of such integrity, prudence, candor and good judgment, as not to be likely to be influenced by anything but the law and the evidence regularly laid before them."

The first and only remaining exception relates to the admission by the commissioners, as evidence before them, of the agreement or contract between the White Mountains Railroad and Daniel Whitcher, in relation to the construction of a side track at Deming's Landing. As we understand the matter, Deming's Landing is a point on the White Mountains Railroad, near the lower or western terminus of the proposed new highway, at which the lumber and other freight to be accommodated by its construction would naturally and unavoidably seek to obtain facilities for transportation over that railroad to market. By the contract between Whitcher and the railroad it was agreed, substantially, that in a reasonable time after the completion of the proposed road, the railroad would

put in a side track at that landing for the accommodation of the freight which might there seek transportation to market in the cars. Upon the hearing, the petitioners offered, and the commissioners received this contract, against the objection of Bath, as evidence tending to show the probability that, if the proposed road should be laid and built, persons drawing lumber over it would enjoy railroad facilities at that point.

Was the evidence competent and proper to be considered by the commissioners, in the view with which it was offered? It seems to us very clear that it was so. The existence of the railroad at the point in controversy was a fact not to be ignored by the commissioners, in their consideration of the demand for and the occasion requiring the construction of the proposed road. They were bound also to consider the obligations of the railroad, imposed by public statute, to provide suitable depot and other facilities for the public accommodation. [Laws of 1850, ch. 953, sec. 6; Comp. Laws 353.] Although the railroad existed and was in operation at that point, it could not well accommodate the lumber and other heavy freight business of the proposed road, without a side track and other facilities for loading it. Hence the probability that such side track would be constructed had a direct, positive and necessary bearing on the question whether or not there was occasion for the proposed road, so far as the lumber and other freight to be transported over it to the railroad were concerned. Whatever tended to render it probable that such side track would be constructed, if the proposed road should be built, was, therefore, proper to be considered and weighed by the commissioners. The contract in question was an existing fact, having more or less tendency to show that such side track would be constructed. It might be enforced between the parties to it; or, if not specifically enforced, it might legitimately be used as an admission by the corporation of the necessity

of the proposed facilities, and their obligation to furnish them, upon a subsequent application to the railroad commissioners to compel the construction of such side track, for the accommodation of freight from the new road when constructed.

It is well settled that in laying out a highway, the existence of a charter for a railroad, and its probable construction within the limits of its charter, are proper matters for the consideration of the commissioners; [*Bethlehem's Petition*, 20 N. H. 210 ; *Hopkinton's Petition*, 27 N. H. 133] ; while the actual construction of such railroad may be good cause for the discontinuance of some roads, and the establishment of others. Indeed, the demand for the construction of a new highway must always be more or less a question depending upon the probabilities of the happening of future events, and the force and strength of those probabilities must necessarily be a proper matter for the consideration of the commissioners, upon any evidence having a legitimate and necessary bearing thereon.

In the case before us, we can entertain no doubt that the contract in question had a legitimate and necessary tendency to show the probability of the construction of a side track at Deming's Landing, for the accommodation of the lumber and other heavy freight from the proposed new highway ; and that it was, therefore, evidence legally competent and proper for the consideration of the commissioners in determining the propriety and necessity of the proposed road.

The conclusion at which we have arrived on this branch of the case renders it unnecessary to consider and determine the question, so fully and elaborately discussed by the counsel on both sides, as to the constitutionality and applicability to the present case of the statute of June 26, 1858, making county commissioners final judges of the competency of all evidence presented before them in hearings upon road petitions.

As in the judgment of the court no one of the various exceptions taken to the report of the commissioners is sustained, they must all be overruled, and judgment rendered upon the report establishing the road as laid out by the commissioners.

*Exceptions overruled—judgment on the report.*